UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------x
SAI ENERGY INC.,

           Plaintiff,             **COMPLAINT**

vs.

                              Civil Case No. 1:24-cv-1082 (MAD/ML)

UNITED STATES OF AMERICA,

           Defendant.
------------------------------------------------x

      This is an action challenging the permanent disqualification of plaintiff from participating as an authorized retailer in the United States Department of Agriculture's Supplemental Nutrition Assistance Program ["SNAP"] by final agency action dated August 8, 2024.

      **PARTIES**

1.   Plaintiff Sai Energy, Inc. operates a gas station and associated retail store within this judicial district.

2.   Defendant the United States of America operates the SNAP program and through the Department of Agriculture and, more specifically, its Food and Nutrition Service Administrative and Judicial Review Branch sustained the permanent disqualification of plaintiff as an authorized retailer in the SNAP program on August 8, 2024.

**JURISDICTION**

3.  Pursuant to 7 U.S.C. section 2023 and 7 C.F.R. section 279.7, this Honorable Court

    has jurisdiction to engage in *de novo* review of the instant permanent

    disqualification and the findings which underlie it.

**STATEMENT OF FACTS**

4.  Since 2018, plaintiff has been an authorized retailer under the SNAP program.

5.  In or about May 2024, defendant charged plaintiff with engaging in prohibited

    "trafficking" of SNAP benefits as defined in 7 C.F.R. section 271.2.

6.  Defendant presented substantial, unanalyzed compilations of data in support of

    this conclusion but did not specify how plaintiff had engaged in such trafficking.

7.  Plaintiff denied that it engaged in trafficking and, following defendant's guidance,

    sought to review the evidence gathered during the agency's surveillance of the store.

8.  Plaintiff timely entered its denial and sought to review said evidence.

9.  Defendant did not make available that evidence and claimed that plaintiff's counsel

    needed to contact a different unit to view the evidence.

10. In further response to defendant's allegations, plaintiff made a submission to the

    agency on June 28, 2024, which include Affidavits from plaintiff's owner's and the

    store's principal employee and records showing the store's payment for high end

    items to explain some of the purchases defendant reported.

11. The Affidavits also explained the training provided by the store owner during the

    relevant time period and disclaimed unlawful trafficking.

12. By decision dated August 8, 2024, after explicitly placing the burden of proof to disprove trafficking on plaintiff, defendant rejected its evidence as insufficient to refute the finding of trafficking.

13. Appellant sells items which are expensive, such as cases of energy drinks, meat, cold sandwiches, eggs, fresh produce, milk, breach, cereal, among others. Long before the instant allegations, plaintiff's owner trained staff on the proper handling of SNAP-eligible transactions and defendant never before alleged form of impropriety in plaintiff's operation of the SNAP program.

14. Before defendant initiated the instant action, plaintiff's owner had no notice or knowledge of any violation of the program or of any allegation of any violation.

15. Defendant imposes no limit on the transaction amount that a customer may engage using a single SNAP EBT card.

16. At plaintiff's store in the relevant time period, SNAP customers used the same SNAP EBT card which can account for multiple transactions in a short time period.

17. At plaintiff's store in the relevant time period, SNAP customers requested that the retailer split payment for transactions into two equal shares.

18. At plaintiff's store in the relevant time period, SNAP customers made back-to-back transactions for reasons beyond the plaintiff's knowledge or responsibility.

19. During the relevant time period, many of plaintiff's customers frequented plaintiff several times daily and made bulk purchases.

20. Plaintiff gave store credit to some SNAP customers for the purchase of eligible items, allowing them to re-pay the credit upon receipt of their monthly allocation.

21. On occasion, upon receipt of their allocation, these same customers would then immediately make a new purchase of items needed for the following month, suggesting a double purchase when, in fact, the two payments reflected different purchases.

22. Each and all of these explanations tended to refute the conclusion that plaintiff had engaged in unlawful trafficking.

23. Defendant has never established that plaintiff accepted SNAP benefits for unauthorized or ineligible retail food in violation of 7 C.F.R. section 178.2(a).

24. Defendant has never established that plaintiff accepted SNAP benefits for alcoholic beverages, tobacco, hot food, or hot food products prepared for immediate consumption in violation of 7 C.F.R, section 271.2.

25. In his submission dated June 28, 2024, through prior counsel, plaintiff explained why and how some transactions showed repeated dollar values [customers split purchases into two transactions].

26. In his submission dated June 28, 2024, through prior counsel, plaintiff explained why there were multiple transactions made from the accounts of an individual SNAP household within a set time period.

27. In his submission dated June 28, 2024, through prior counsel, plaintiff explained why the bulk of a household's remaining benefits were depleted within a short timeframe.

28. In his submission dated June 28, 2024, through prior counsel, plaintiff explained why a large number of manual transactions were made from household accounts.

In his submission dated June 28, 2024, through prior counsel, plaintiff explained why defendant's analysis of the store inventory was flawed and its conclusions about recorded food stock were based on insufficient observation/data.

29. Defendant claims that its conclusions are based in part on "store visit observations, the location and characteristics of competitor firms, and household shopping patterns."

30. However, during the six month period in question [August 2023-through January 2024, inclusive], defendant's agents made one brief visit to the store [on October 18, 2023], never requested records showing the store's inventory or purchasing, never disclosed the location and purported characteristics of any competitor firms or provided any notice in its accusatory letter of the claimed "household shopping patterns" against which it compared plaintiff's customers.

31. In fact, as shown in 15 photographs which represent the typical store inventory and in contravention of defendant's conclusions, plaintiff typically had a much more substantial stock of food than defendant's contractor claims to have observed on October 18, 2023.

32. Defendant's conclusion that there was "no way" for it to determine that, "[A]ppellant's photographs reflect store conditions and pricing during the review period, the photographs do not explain the unusual transaction patterns noted in the charge letter[.]" is arbitrary and capricious.

33. Of course, there was a way to determine when the photographs were taken and normal stocking patterns in the store; however, defendant's agents made no such

effort or inquiries and, despite plaintiff's contrary proofs, baselessly concluded that the store lacked the inventory of higher-priced items.

34.  As the photographs and the records of purchase plaintiff submitted to defendant fairly establish the nature of the store and refute the store characteristics defendant relied upon in reaching its conclusions, the latter are flawed, arbitrary and capricious.

35.  In addition, in sustaining the agency's field conclusions, defendant's August 8, 2024 letter imposed a legally impermissible standard upon plaintiff" that it produce "credible and convincing evidence" to "demonstrate that these transactions were more likely due to reasons other than trafficking."

36.  Said standard differs from a preponderance of the evidence and is unwarranted as a matter of law.

37.  The period of review in this case was six months, August 2023 through January 2024, inclusive.

38.  By defendant's own account, the data which defendant claims proves trafficking shows slightly  more than one large purchase a day [209 such purchases in 184 days].

39. Some of these purchases [i.e., $40 or $60]  cannot fairly be defined as "large" in light of the family composition of the SNAP recipients and their use of the store as a local supermarket [it is located in a food desert].

40.  The claim that 1 large purchase/day is suspicious belies common sense and is arbitrary and capricious.

41. Indeed, the defendant has not explained why one large purchase/day establishes evidence of trafficking, as opposed to the use of the store as plaintiff has explained.

42. Likewise, in 184 days, defendant claims that 77 transactions between $99.00 and $99.99 is suspicious is unexplained.  Again, this is an average of less than one such transaction every two days and defendant has provided no benchmark data against which to compare/contrast this or any other basis to conclude that this is suspicious.

43. While defendant's final letter is replete with claims about "patterns of transactions," cherry-picking a very small percentage of transactions lacks any analytic value or virtue and is arbitrary.

44. For example, the agency claims that there were 28 transactions in 184 days between $80.00 and $80.99 but these data prove nothing; put another way, each week, the store had one such transaction, hardly indicative of any pattern.

45. Likewise, that less than 1 transaction each week totaling $40.00 proves nothing more than 1 transaction every other week totaling $99.90.

46. Rather than prove that plaintiff engaged in any prohibited transactions, defendant's case is based on conclusions like this one: "that various customers each repeatedly had totals around certain dollar amounts during the review period strains the credulity of Appellant's declaration that this activity reflected the acceptance of SNAP benefits in exchange for eligible food items."

47. This is not an empirically driven conclusion; rather, it is sheer speculation and provides no basis for the permanent disqualification of the plaintiff.

48. Likewise, plaintiff explained the pattern of multiple transactions – people sharing the same card, asking for their orders to be divided or people paying a prior credit and then shopping for needed products on the same visit.

49. Defendant's analysis is suppositious and makes claims that "most" consumers would behave a certain manner, acknowledging that some consumers do not behave as typical, but then seeking to hold plaintiff responsible for dealing with a small sub-set of consumers whose behavior defendant considers atypical.

50. This is graphically illustrated by defendant's analysis of 'Charge Letter Attachment 3 on pages 11-12 of the final determination letter.

51. The defendant lists 45 sets of transactions [or less than 2/week during the relevant time period] in which "the bulk of the households' remaining benefits were depleted within short time frames," considering this evidence of trafficking.

52. However, in reaching this conclusion, defendant focuses on three of hundreds of households with whom plaintiff deals and argues that "most households do not spend all or a majority of their monthly benefits in only a few transactions or a single day."

53. Defendant further contends that such a shopping pattern is "inconsistent with the normal shopping behavior of SNAP households[']", but this hardly establishes any misconduct on plaintiff's part.

54. Defendant admits that there is no regulation barring SNAP recipients from expending all of their benefits at once.

55.  Defendant admits that there are SNAP households who do exactly what some of plaintiff's customers did and that plaintiff engaged in no wrongdoing by accepting these unusual shopping patterns.

56. Likewise, finding 2-3 manual swipes/week is not indicative of any pattern of trafficking as manual entries are recorded as swipe entries and not indicative of any intent to deceive or evade.

57. Plaintiff submitted invoices which defendant concedes show high priced items which match the purchase questioned by charge letter attachment #5: "It is important to note that even if the results of the invoice analysis had indicated that Appellant had purchased sufficient food inventory to account for the firm's SNAP redemption volume, sufficient inventory alone does not explain the suspicious pattern of SNAP transactions noted in the charge letter."

58. In short, when plaintiff submitted evidence showing food inventory which could account for the suspicious purchasing pattern [that is, the use by patrons of this store more as a supermarket than as a convenience store], defendant continued to reject the submission as inadequate evidence.

59. In its charge letter, defendant did not provide much of the evidence relied upon by its Administrative Review Officer, including that cited on pages 14-15 of her letter under the bold headings: "Competitive Stores:", "Household Analysis:", "Comparison with Similarly Situated Stores:".

60.  Accordingly, plaintiff has no opportunity to review these alleged bases for defendant's permanent disqualification decision and reliance upon such

information deprived plaintiff of both notice and a fair opportunity to contest these

bass for the agency's final, punitive action.

**AS AND FOR A FIRST CAUSE OF ACTION**

61. Plaintiff incorporates paras. 1-60 as if fully re-written herein.

62. The defendant's permanent disqualification decision is arbitrary, capricious,

and contrary to law as plaintiff did not engage in trafficking during the cited

months, and defendant's contrary evidence is insufficient to establish the

contrary conclusion.

63. To the extent the defendant applied a "clear and convincing" standard of proof,

requiring that plaintiff disprove it engaged in trafficking during the cited months,

using that standard, it acted arbitrarily and contrary to law.

64. To the extent the defendant required plaintiff to disprove that it engaged in

trafficking, the agency reversed the appropriate burden of proof in a civil matter,

and its evidence failed to establish that plaintiff did engage in trafficking and it

based on speculation, surmise and explained deviations from allegedly normal

consumer behavior.

**WHEREFORE**, plaintiff prays that this Honorable Court vacate the final

agency action dated August 8, 2024, including the permanent disqualification

the defendant imposed, reinstate plaintiff as an authorized retailer in the SNAP

program and enter any and all further relief permitted by law, including the

reimbursement to plaintiff of the costs and disbursements incurred by and

through the filing of this action.

10

Dated:  September 6, 2024

Respectfully submitted,

Michael H. Sussman [103324]

SUSSMAN & GOLDMAN
PO BOX 1005
1 RAILROAD AVENUE, STE 3
GOSHEN, NY 10924
(845)-294-3991

Counsel for Plaintiff